UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 1:22-CR-00050-LEW |
| | ) | |
| XAVIER PELKEY | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Xavier Pelkey, respectfully submits this memorandum in aid of sentencing. Mr. Pelkey asks this Court to impose a sentence of 72 months with 36 months of supervised release because of his young age, the difficulty of one-size-fits-all sentencing guidelines enhancement, his lack of previous violent offences, his history of trauma and abuse, and his high-risk susceptibility to recruitment.

**FACTS**

Mr. Pelkey is a young man from Waterville, Maine. PSR 53. The son of two drug addicts, Mr. Pelkey has lived a difficult and turbulent life. PSR 53. Mr. Pelkey's father was only in his life for a short period. PSR 53. During that time, Mr. Pelkey's father was abusive and dismissive of his son. PSR 53. Mr. Pelkey specifically remembers a time where his father kidnapped him the age of five and forcing him to eat out of the trash. PSR 53. His father has nine children with nine different women, and had little interest in raising Mr. Pelkey--eventually abandoning him shortly after the kidnapping incident. PSR 53, 54.

1

Mr. Pelkey has had little in the way of family connection outside of his younger brother. PSR 54. Mr. Pelkey has been devoid of a male role model for almost his entire life. PSR 53. He witnessed physical and verbal domestic abuse between his mother and her various domestic partners. *Id.* The one man who Mr. Pelkey did look up to was was his stepfather, Justin LaBonte. However, when Mr. Pelkey was nine years old, Mr. LaBonte died from a seizure disorder just months after marrying Mr. Pelkey's mother. PSR 53. Mr. Pelkey watched as first responders unsuccessfully attempted to save his stepfather's life. PSR 53.

The impact of this trauma left nine-year-old Mr. Pelkey helpless, isolated, and depressed. PSR 53. Shortly after his stepfather's death, Mr. Pelkey attempted suicide by hanging himself with an electric cord in his mother's apartment. PSR 61. Mr. Pelkey's childhood was as bleak and unhappy as any depicted in a Dickens novel.

The traumas and "exposure to domestic violence and substance use, and inconsistent parenting" caused him to act out throughout his childhood. PSR 62. Mr. Pelkey sought the family ties and stability that he was deprived of throughout his life. This desire for belonging led Mr. Pelkey to associate with the wrong people, and his deep desire to please led him to make poor decisions in order to fit in. PSR 56.

Between the ages of 15 and 17, Mr. Pelkey's search for a sense of belonging and support led him to embrace Islam and become dedicated to the religion. Mr. Pelkey's passion for his religion, and drive to better his life, was recognized by his family. PSR 53. His mother reports that "Islam has helped [Mr. Pelkey]. [He]

2

has a better relationship w[ith her] . . . [and] does things he is asked."[1] He dedicated himself to religion and education. Since converting to Islam, Mr. Pelkey achieved his high school diploma and had no negative interactions with law enforcement until this offense.

In late 2020, as we all experienced the social isolation associated with COVID, Mr. Pelkey was living at home in Waterville. He found it difficult to find other Muslims to worship and study with in person and because of this, was isolated again. His family members noticed that he did not leave his room often.[2] There is no mosque in Waterville and the family has no access to a vehicle, so Mr. Pelkey had no in-person option to practice his faith. He had to go online to find other Muslims in order to practice, study, and maintain his dedication to his faith. (Interview with Jasmin Pelkey Discovery 27011). It was here, in the online community, that Mr. Pelkey was indoctrinated by extremist ideologies and introduced to the individuals and their plan that led to his arrest.

## ARGUMENT

1. **Mr. Pelkey has Accepted Responsibility for his actions and should receive a 3-Level Reduction under the U.S.S.G. and a downward departure from the sentencing guidelines.**

"If the defendant clearly demonstrates acceptance of responsibility for his offense," the offense level should be decreased by two levels. U.S.S.G § 3E1.1(a). If "the offense level . . . is level 16 or greater, decrease the offense level by 1 additional level." § 3E1.1(b). "In determining whether a defendant qualifies . . .

---

[1] Interview with Jasmine Pelkey Discovery 27011.
[2] Interview with R. Pelkey 26973.

3

appropriate considerations include, but are not limited to the following:" (1) "truthfully admitting the conduct comprising the offense of conviction . . . A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting . . . a reduction under this subsection;" (2) "voluntary termination or withdrawal from criminal conduct or associations;" (3) "voluntary payment of restitution prior to adjudication of guilt;" (4) "voluntary surrender;" (5) "voluntary assistance in the recovery of the fruits and instrumentalities of the offense;" (6) "voluntary resignation from the office or position held during the commission of the offense;" (7) "post offense rehabilitative efforts;" (8) " timeliness of the defendant's conduct in manifesting the acceptance of responsibility."

Mr. Pelkey accepts responsibility for his actions. The Government recommends that he receive the reduction in sentencing guidelines for his acceptance of responsibility. PSR 34. Mr. Pelkey pled guilty to the charges, saving the Government time and resources. This is especially significant given the lack of precedent in this district for these charges and the desirability of avoiding a public airing of aspects of the investigation.  It must be noted that there was an incident at the Somerset County Jail with another inmate which has led to criminal charges; however, this incident took place well before his guilty plea and acceptance of responsibility, and Mr. Pelkey has not engaged in any criminal activity outside of that incident.[3]  It is also worth mentioning that Mr. Pelkey is

---

[3] Xavier has been charged with assault on another inmate as a result of this incident. It has not been adjudicated. Xavier objects to the characterization of the altercation that took place at the jail. He has had no chance to offer

4

a Muslim in a jail without a Muslim population. He is young, of a small stature, and different from others. This creates an environment where his instinct for self-preservation may be incited more readily than it would for others. With respect to the instant matter, there are no identifiable victims and thus there is no restitution to be paid. Significantly, Mr. Pelkey has taken proactive steps to rehabilitate. Since his incident Mr. Pelkey committed to participate in counseling sessions with Parents for Peace, an organization that works with youth who have been radicalized and which seeks to identify the root cause of their involvement. The organization seeks to channel their past mistakes into something positive, finding meaning in helping others overcome their own addiction to hate. Mr. Pelkey sought funding from the court to participate in this rehabilitative program, but the funding was not available. In addition to his commitment to Parents for Peace, Mr. Pelkey continues to follow self-rehabilitative efforts while awaiting sentencing through reading, writing, and prayer. Finally, Mr. Pelkey entered a guilty plea in a timely manner after the superseding indictment was issued, further showing his willingness to save the Government ample time and resources. For the reasons above Mr. Pelkey has shown that he accepts responsibility and is dedicated to his own rehabilitation. Therefore, he should receive a reduction of 3 levels for the offense, and the court should consider a departure from the sentencing guidelines in this case.

    **2. Despite Mr. Pelkey's traumatic life experiences, he shows signs of compassion and drive, and these factors warrant leniency.**

---

evidence of his own to rebut the allegations set forth in the pre-sentencing report. *See* Objections to presentencing report.

In Mr. Pelkey's case there is a significant history of trauma and abuse. PSR 53. Mr. Pelkey was witness to significant domestic abuse in his early years. *Id.* Mr. Pelkey's mother was addicted to drugs throughout a large portion of his life. *Id.* Mr. Pelkey's father has 9 children, all with different mothers, and after a brief neglectful and abusive relationship with his Mr. Pelkey, abandoned him completely. *Id.* Mr. Pelkey witnessed both physical and verbal domestic abuse in his household from an early age between his mother and her domestic partners. Mr. Pelkey suffered the horrifying experience of watching the only positive male role model he had ever known—his stepfather—die in front of him at the age of nine. PSR 61. Suffering from extreme depression as a result of this event, Mr. Pelkey attempted to commit suicide before his tenth birthday by hanging himself with an electrical cord at his home. *Id.*

Mr. Pelkey has been deprived of a normal supportive family for his whole life. While Mr. Pelkey and his mother Jasmin have a good and loving relationship now, she struggled with drug abuse throughout Mr. Pelkey's childhood and at times was unable to take care of her children. PSR 53. At times in his life, Mr. Pelkey was removed from his mother's custody by DHHS and put into the custody of others due to her drug addiction. *Id.* There has been little stability in Mr. Pelkey's life. *See* PSR 53, 54.  Mr. Pelkey's inability to have success in the world was influenced by these traumas and they likely played a role in his current behavioral, social, and emotional functioning. PSR 62.

Despite the persistent trauma that permeated Mr. Pelkey's life, he has shown compassion and drive. Mr. Pelkey has a younger brother, who suffers

6

from autism and is considered to be low functioning. Mr. Pelkey adores his brother and the two have a great relationship. PSR 54. Mr. Pelkey was a crucial emotional support for his brother through the turbulent shifts of custody and through changes in living situation, when they would move from rental to rental. PSR 54, 55. Additionally Mr. Pelkey has shown that he is willing to work towards a goal. He achieved his high school diploma, and found religion, which, until this offense, was a positive in his life and the lives of those around him. Mr. Pelkey dedicated himself to becoming a scholar of the Koran; his relationships with his family improved.

Mr. Pelkey has shown his potential for empathy. He understands and accepts responsibility for his actions and intends to continue to work toward being a positive, stable member of his community and his family.

### 3. Mr. Pelkey was a teenager—just barely 18 years old when the conduct occurred.

Mr. Pelkey was barely 18 years old at the time he was arrested in Waterville. There is no doubt that the conspiracy he was involved in was a serious offense and could have put the public in danger. It is a good thing that the plan never got beyond the planning stage. Mr. Pelkey is now able to begin his path toward rehabilitation.

The plan was what one might expect from a group of teenagers: incomplete ideas, shoddy craftsmanship, and lack of knowledge of how to acquire items to consummate their ideas. The other teens invited Mr. Pelkey to join their plan, they were in charge of planning the transportation and had knowledge of how to

acquire firearms. The other conspirators enlisted Mr. Pelkey to participate as "the bomb guy."[4],[5]

Mr. Pelkey has no training with explosive devices. There is no evidence that he has had any prior interaction with them at all. This is reflected in the rudimentary attempt at crafting amateur devices found at his apartment—three makeshift devices consisting of fireworks and firecrackers wrapped with electrical tape—the clear unresearched home project of a teenager. It is unlikely Mr. Pelkey and his acquaintances would have succeeded in their plan.

**4. The U.S.S.G.'s one-size-fits-all recommendation is excessive, and the court should consider Mr. Pelkey's age, childhood trauma, and that he has never been convicted of a violent crime as factors for a downward variance.**

The U.S.S.G.'s guideline range in this case is excessive and shows of how the one-size-fits-all enhancement for terrorism creates unjust and unnecessarily heavy punishments. All crimes that fall under the terrorism enhancement that are "less than 32, [are] increase[d] to 32." U.S.S.G. § 3A1.4. Additionally, if the level of the crime is above a 32, it is "increase[d] by 12 levels. *Id.* In each case under the Terrorism enhancement, regardless of prior criminal history, "the defendant's criminal history category . . . shall be category VI"—the highest category in the sentencing guidelines. *Id.*

The sentencing guidelines have been deemed to be "excessively harsh" by some courts in recent years as a recognition of the one-size-fits-all criminal

---

[4] There were searches for firearms on a phone at his house, but no firearms were recovered. PSR 18.
[5] DISCOVERY 00027950 p. 2 ¶2

8

sentencing, especially when it comes to the material support addition to the statutory language. By looking at past trauma in an offender's life courts have been trending toward a downward variance. *See United States v. Ceasar*, 10 F.4th 66 (2d Cir 2021) (affirming a district court decision to deviate downward from a range of 360-600 months to 48 months for a defendant charged with material support for a foreign terrorist organization based upon defendant's past trauma and need for rehabilitation, despite her purposefully impeding the investigation, expert testimony on the importance of online recruiting for ISIS, and her direct involvement in that recruiting); *United States v. Dias*, 482 F.Supp.3d 800 (E.D. Wisc. 2020) (applying a downward deviation from the recommended range of 292-365 months to 90 months based on the defendant's age and prior trauma, for a defendant charged with material support for a foreign terrorist organization by "providing advice on how to make explosive devices and poison, prepare for an attack, and select targets" to an indefinite number of people).

In Mr. Pelkey's case there is a significant history of trauma and abuse; however, he has not made any attempt to impede the investigation. PSR 53. Mr. Pelkey's counselor stated that the past traumas of exposure to domestic violence, exposure to substance abuse, and parental inconsistencies "play a role in his current behavioral, social, and emotional functioning." PSR 62

Mr. Pelkey was a teenager at the time of his arrest. He has shown signs of compassion and drive. He struggles with impulse control.  His counselor states that he needs counseling and would benefit from "treatment to understand the role of trauma in his functioning and develop more adaptive skills for self-

regulation." PSR 62. With treatment Mr. Pelkey can address the true cause of his behavior—his trauma—to focus more on his compassion and drive.

The sentencing guidelines range is excessive, and Mr. Pelkey's case warrants a downward variance. A sentence of 6 years, where he can undergo treatment at the facility, and 3 years supervised release is more than adequate here. A longer term of incarceration would be greater than necessary to punish Mr. Pelkey.

> **5. Mr. Pelkey's young age in conjunction with his isolation and history of childhood trauma made him susceptible to radical ideology and warrants a departure from the sentencing guidelines.**

"Age (*including youth*) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.1 (Emphasis added)

Mr. Pelkey's age, his isolation, his need to be on social media to practice his religion, and his trauma-induced difficulties with behavioral social and emotional functioning put him in a high-risk category for recruitment strategies employed by extremist organizations and warrant a downward departure from the U.S.S.G. recommendations.

Many young Muslims in rural areas use the internet to connect with other people of their faith. Thus, the internet is an important tool for these organizations when looking to recruit followers to their cause. *See Ceasar*, 10 F.4th 66 at 72. Recruiters have become particularly sophisticated in using new

forms of media to appeal to young people.[6] This is a trait that the FBI recognizes and even has recently developed a program to combat the practice.[7] A Homeland Security Committee task force looked into Americans attempting to join radical organizations and found that a significant portion of those recruited were teenagers and many under the age of 18.[8] The recruitment practices have been analogized to those used for youth involvement in gang activity: "the similarities of gang recruitment and [radical religious] recruitment are revealing."[9] However, while of many of the youth who join radical groups do so before they are deemed adults, some, as is the case here, are just over the age of 18 when arrested and therefore tried as adults, and as such are exposed to hugely disproportionate penalties.

At the time of his arrest on February 11, 2022, Mr. Pelkey was less than 100 days past his 18th birthday. While this does not excuse his crime, the Court should consider that he was just three months beyond a juvenile sentence for this offense. Mr. Pelkey had no history of violent criminal convictions before this offense. It was noted that his relationships had improved and he was deeply involved in his religious studies. PSR 53. Mr. Pelkey is a devoutly religious person and during the time leading up to the instant offense, spent much of his time studying his faith. He does not have access to a car. There is no mosque in Waterville. His isolation kept him from his ability to study and practice his faith,

---

[6] J. Richard Broughton, Of Puppets and Terrorism, 62 S.D. L. Rev. 682, 686 (2017) p. 3 ¶ 2
[7] *Id* at 684.
[8] *Id*.
[9] *Id* at 686.

which forced him online in order to connect with other Muslims. These factors in combination with his cognitive functioning issues and yearning for acceptance made Mr. Pelkey a high risk to be selected by these recruiters and he was unfortunately swayed by their message. Mr. Pelkey is an unusual case because while he was a juvenile during recruitment, and although this happened within the span of months, he was not a juvenile when he was arrested for this offense. His age should be considered as an important factor in the Courts sentencing decision, and when considered, a significant downward variance is warranted in Mr. Pelkey's case.

## CONCLUSION

Mr. Pelkey is a 19-year-old whose life has been marked by tragedy, isolation, and abuse. The weight of these experiences in Mr. Pelkey's young life led him to seek out inclusion at all costs, and eventually to agree to participate in the instant offense. While the U.S.S.G. call for the statutory maximum of 15 years, Mr. Pelkey's acceptance of responsibility, his lack of prior violent criminal history, and his high-risk age when he became radicalized warrants a downward variation. Ultimately, a sentence of 72 months with 36 months of supervised release is appropriate in this case.

DATE:  09/22/2023                                        /s/ Christopher K. MacLean
                                                         Christopher K. MacLean, Esq.
                                                         DIRIGO LAW GROUP LLP
                                                         20 Mechanic Street
                                                         Camden, Maine  04843
                                                         207-236-2500
                                                         chris@dirigolawgroup.com

Bar No. 8350

## CERTIFICATE OF SERVICE

I, Christopher K. MacLean, Esq., attorney for Xavier Pelkey, hereby certify that I have served, electronically, a copy of the within "DEFENDANT'S OBJECTION TO PRESENTENCE REPORT upon Craig Wolff, Assistant United States Attorney, via the ECF system.

/s/ Christopher K. MacLean, Esq.
Christopher K. MacLean, Esq.

DATE:  09/22/2023

13